THE PEOPLE OF THE STATE OF ILLINOIS, Plaintiff-Appellee, *v.* RUSSELL ALVIN GREEN, Defendant-Appellant.

Fourth District   No. 14497

Opinion filed December 30, 1977.

Richard J. Wilson and Donald T. McDougall, both of State Appellate Defender's Office, of Springfield, for appellant.

Thomas J. Difanis, State's Attorney, of Urbana (Robert C. Perry and Marc D. Towler, both of Illinois State's Attorneys Association, of counsel), for the People.

Mr. PRESIDING JUSTICE REARDON delivered the opinion of the court:

After pleading guilty to the offenses of rape, deviate sexual assault, and armed robbery, violations of sections 11—1, 11—3, and 18—2 of the Criminal Code of 1961 (Ill. Rev. Stat. 1975, ch. 38, pars. 11—1, 11—3, 18—2), the defendant was sentenced to concurrent terms of imprisonment of 17 to 48 years for the sex offenses and 16 to 45 years for the armed robbery offense. The sentences were ordered to run consecutive to a 15-year sentence of imprisonment which had been imposed in the State of Indiana for similar offenses committed within 24 hours of those involved in this cause.

On appeal, defendant's sole contention is that the imposition of allegedly excessive minimum sentences consecutive to the Indiana sentence frustrates the constitutional objective of restoring the defendant to useful citizenship. Defendant contends that the sheer length of the sentences precludes the possibility of effective rehabilitation.

Briefly summarized, the facts of this case are that defendant was an 18-year-old Caucasian at the time the offenses were committed. Defendant and several other young men had been drinking and ingesting an animal tranquilizer known as phencyclidine or PCP on June 9, 1976, after which they set out in an automobile on Interstate 57 for the expressed purpose of raping black women. When they discovered another automobile with a flat tire near Champaign, three of the defendant's acquaintances escorted the male driver of that automobile to a gas station while the defendant, Jerry Richardson, and Scotty Turner remained with the man's wife and child in the broken-down automobile.

Before her husband returned, the woman was choked, poked with a screwdriver, beaten by the defendant, and dragged into a nearby ditch where the defendant and Richardson tore her clothing off. Richardson was the first to have intercourse with the woman. His assault was followed by the defendant who forced the victim to submit to an oral sex act by him after which Richardson forced her to resume intercourse with him. Richardson, thereafter, assaulted her anally while, at the same time, defendant performed another oral sex act. The defendant then had intercourse with the victim and Turner followed by performing an oral sex act upon her. When Turner finished, Richardson resumed having oral sex with her and Turner followed by forcing her to submit to intercourse

with him. Green concluded the incident by forcing oral sex upon her just as the woman's husband and police arrived. During the course of the incident, Green held a screwdriver to her side, forcing the victim to surrender the five dollars she had in her wallet.

When the defendant was informed of the arrival of his victim's husband, he prodded her with a screwdriver and ordered her to dress. The defendant asked the victim how much money her husband was carrying and the defendant threatened to stab her if she told her husband about what had happened.

In *People v. Honn* (1977), 47 Ill. App. 3d 378, 362 N.E.2d 90, we discussed section 11 of article I of the 1970 Illinois Constitution and the sentencing objective of crafting sentences for individual offenders with due regard for their conduct and rehabilitative potential. We are, as *Honn* demonstrates, sensitive to the tension inherent in the sometimes conflicting factors which a judge must weigh when he imposes a sentence. As we noted in *Honn* and other cases (*e.g., People v. Hines* (1976), 44 Ill. App. 3d 204, 206, 357 N.E.2d 884, 885), we will not tinker with a sentence imposed by the trial court unless the court has somehow abused its discretion in imposing the sentence.

The defendant contends that he has an excellent potential for rehabilitation because he has expressed remorse for his crimes, voluntarily surrendered to the police, and voluntarily confessed to the crimes. While it does appear that defendant has potential for rehabilitation, we cannot overlook the heinous character of the acts to which he subjected his victim. We also note that remorse did not come quickly to the defendant. He did not surrender to the police immediately after attacking the victim. He fled from the scene, returned to Indiana, and hid from the police until he spoke with his mother. Before surrendering, he most certainly must have realized that his only other alternative was to live the hopeless life of a fugitive from the law.

Defendant also contends that his guilty pleas are themselves evidence of his remorse and are indicative of self-rehabilitation. We note, however, that defendant entered his guilty pleas only after receiving discovery materials from the prosecution which overwhelmingly evidenced his guilt. This delay demonstrates to us that the defendant at that stage came to a realistic appraisal of the undesirable alternatives facing him as a result of his criminal conduct. In pleading guilty, defendant may well have hoped for a resulting demonstration of leniency at the time his sentence was imposed. Neither the prosecutor nor the court made assurances to the defendant that such leniency would be forthcoming.

In oral argument before this court, defendant's counsel ably suggested that to severely punish the defendant for acts which he alleged were committed in a drug-and-alcohol-crazed state of mind would be

tantamount to punishing Robert Louis Stevenson's character Dr. Jekyll for the crimes of Mr. Hyde. Of course, counsel's reference was to Stevenson's tale of the *Strange Case of Dr. Jekyll and Mr. Hyde* 334-401 (Putnam 1963). Jekyll, however, freely admitted that he was Hyde, a figure for whom he held no conscious repugnance. Jekyll delighted in his ability to shed his goodness and he reveled in the pure evil that was Henry Hyde. His ability to "plod in the public eye with a load of genial respectability, and in a moment, like a schoolboy, [to] strip off these lendings and spring headlong into the sea of liberty" constituted an impenetrable mantle and enabled him to laugh at suspicion even though his glance at the mirror reflected only one person. (Stevenson, at 387-90.) As in Stevenson's fictional tale, the instant defendant cannot say that a person other than himself committed the instant offenses simply because he had ingested drugs and liquor prior to committing the crimes. Defendant pleaded guilty here and does not contend that he lacked the mental state necessary for a finding of guilt. Just as Jekyll was truly Hyde, so also is the defendant the true offender here. As much as our law would prefer to penalize the evil in man for the crimes men commit, we must content ourselves with imposing punishment on those men in whom the evil lurks.

■■ The evidence presented at defendant's sentencing hearing can be interpreted to be in the nature of aggravation or mitigation, however, after reviewing all of that evidence, we cannot say that the sentences imposed in this cause are excessive or that the judge abused his discretion in any way. *People v. Scott* (1977), 45 Ill. App. 3d 487, 359 N.E.2d 878.

■■ In this case, although defendant's Illinois sentences were imposed consecutive to the 15-year Indiana sentence, the defendant has not argued that the consecutive nature of the sentences are violative of section 5—8—4(b) of the Unified Code of Corrections (Ill. Rev. Stat. 1975, ch. 38, par. 1005—8—4(b)) or of the requirements of *People v. Dawson* (1975), 30 Ill. App. 3d 147, 332 N.E.2d 58, which construed section 5—8—4(b). Accordingly, we find that the potential issue relating to *Dawson's* discussion of consecutive sentences has been waived. Supreme Court Rule 341(e)(7) (58 Ill. 2d R. 341(e)(7)); *People v. O'Neil* (1974), 25 Ill. App. 3d 227, 231, 323 N.E.2d 7.

Section 5—8—4(a) of the Unified Code of Corrections (Ill. Rev. Stat. 1975, ch. 38, par. 1005—8—4(a)) permits the imposition of sentences consecutive to sentences imposed in other jurisdictions. (See generally *People v. Dye* (1977), 69 Ill. 2d 298, 371 N.E.2d 630 (*re:* section 5—8—4(a) and Federal sentences).) In *People v. Logan* (1974), 23 Ill. App. 3d 41, 318 N.E.2d 94, this court remanded the cause for resentencing because the sentencing judge imposed a 1-year sentence of imprisonment that was to run consecutively to any other sentence the defendant was then

serving. The court held that this sentence was too indefinite and remanded the cause accordingly. Accord, *People v. Reed* (1977), 51 Ill. App. 3d 479, 366 N.E.2d 1137.

■■■ Where consecutive sentences have been imposed, the judgment need not fix the precise day on which each successive term of imprisonment shall commence. It is sufficient if every succeeding term begins at the expiration of the previous one. (*People v. Jazorak* (1948), 400 Ill. 447, 81 N.E.2d 191.) In the instant case, the Indiana sentence is neither indefinite nor uncertain and the Illinois sentences may properly follow it.

For the foregoing reasons, we affirm the sentences imposed by the trial court in this cause.

Affirmed.

CRAVEN and MILLS, JJ., concur.